United States District Court
Southern District of Texas
**ENTERED**
October 31, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| JEWELL THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 2:22-CV-00152 |
| | § | |
| JERRY SANCHEZ, *et al*, | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**</u>

Plaintiff Jewell Thomas, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff asserts claims against Defendants under the Eighth Amendment, the Equal Protection Clause of the Fourteenth Amendment, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A), and the Rehabilitation Act (RA), 29 U.S.C. § 794.  Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

Plaintiff has stated, for purposes of screening: (1) an Eighth Amendment deliberate indifference claim against Dr. Isaac Kwarteng in his individual capacity for monetary relief and in his official capacity for injunctive relief; and (2) ADA/RA claims against the State of Texas and Dr. Isaac Kwarteng, Jerry Sanchez, and Bobby Lumpkin in their official capacities. Accordingly, the undersigned recommends that these claims be RETAINED.  The undersigned will order service on Defendants.

For the reasons set forth below, the undersigned recommends further that: (1) Plaintiff's § 1983 claims for money damages against Dr. Isaac Kwarteng and Jerry Sanchez in their official capacities be DISMISSED without prejudice as barred by the Eleventh Amendment; (2)

1 / 23

Plaintiff's Eighth Amendment deliberate indifference claim against Jerry Sanchez in his individual capacity for monetary relief and official capacity for injunctive relief be DISMISSED with prejudice as frivolous or for failure to state a claim upon which relief may be granted; (3) Plaintiff's equal protection claims against Dr. Isaac Kwarteng and Jerry Sanchez in their individual and official capacities be DISMISSED with prejudice as frivolous or for failure to state a claim upon which relief may be granted; and (4) Plaintiff's ADA/RA claims against Dr. Isaac Kwarteng, Jerry Sanchez, and Bobby Lumpkin in their individual capacities be DISMISSED with prejudice as frivolous or for failure to state a claim upon which relief may be granted.

### A. Jurisdiction.

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

### B. Background.

#### 1. Plaintiff's § 1983 action.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID) and is housed at the McConnell Unit in Beeville, Texas, which lies within the Southern District of Texas. Plaintiff's lawsuit concerns his housing, which he claims is too hot.

In this action, Plaintiff sues the following defendants: (1) McConnell Unit Warden Jerry Sanchez ("Warden Sanchez"); (2) McConnell Unit Medical Director Dr. Isaac Kwarteng ("Dr. Kwarteng"); (3) TDCJ-CID Director Bobby Lumpkin ("Director Lumpkin"); and (4) the State of Texas ("State") (collectively, "Defendants"). Plaintiff generally claims that Defendants violated

his Eighth Amendment, equal protection, and ADA/RA rights by failing to provide air conditioning in his living area, as Plaintiff was allegedly susceptible to excessive heat conditions because of his medical and mental health disabilities.  (Doc. No. 1 at 9.)  Plaintiff seeks monetary relief, and also seeks to be moved to air-conditioned housing.  *Id*. at 7; Doc. No. 18, pp. 60-61.

### 2. The September 1, 2022 Spears hearing.

On September 1, 2022, the undersigned conducted a *Spears*[1] hearing, in which Plaintiff was given an opportunity to explain his claims.  The following representations were made either in Plaintiff's Original Complaint (Doc. No. 1) or at the *Spears* hearing.

Plaintiff alleges that he has diabetes and hypertension, which he claims make him more susceptible to excessive heat conditions.  (Doc. No. 1, p. 9.)  According to Plaintiff, the excessive indoor heat combined with his Type 2 diabetes prevents him from staying hydrated. *Id.*; Doc. No. 18, p. 30.  Because his body is fighting to stay hydrated, he says, Plaintiff allegedly is unable to sweat properly and is unable to walk, stand, or lift without feeling chest pain and fatigue.  (Doc. No. 1, p. 9.)  During extreme heat conditions, Plaintiff experiences dizziness and trouble concentrating, thinking, and reading.  *Id.*  Plaintiff also states that he has suffered heat cramps that render him unable to walk.  (Doc. No. 18, p. 38.)  Plaintiff stated that he last suffered a heat cramp the week before the *Spears* hearing.  *Id.*

Plaintiff states that he has hypertension, which impairs his respiratory, circulatory, and cardiovascular systems.  (Doc. 1, p. 10.)  His hypertension, combined with excessive heat, allegedly causes him to be lightheaded, lose coordination, and have palpitations.  *Id.* at 10; Doc. No. 18, pp. 30–31.  Additionally, Plaintiff's alleged schizoaffective disorder, combined with

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

excessive heat, also allegedly impairs his thermoregulatory system and causes him to hallucinate and hear voices, and to have racing thoughts, anxiety, and shortness of breath.  (Doc. No. 1, p. 10; Doc. No. 18, p. 32.)  As a result, Plaintiff states that he goes on complete bed rest and cannot engage in any daily activities.  (Doc. No. 18, p. 33.)

Plaintiff testified that he is regularly subjected to excessive heat of over 100 degrees in Building 8, where he is housed.  (Doc. No. 18, pp. 33–34.)  Only the nurse's station in his building is air-conditioned, he says.  *Id.* at 34, 38.  According to Plaintiff, the excessive heat starts around 9:00 a.m. and lasts until midnight.  *Id.* at 35.  The excessive heat allegedly began in March 2022 and remained until the beginning of September 2022.  *Id.*  Plaintiff states that he is provided a shower once or twice a week.  *Id.*  In addition, prison officials provide Plaintiff with cold water in 16-ounce bottles two to three times a day.  *Id.* at 36.  Plaintiff acknowledged that he is able to access lukewarm water in the sink in his cell, but described the water as undrinkable.  *Id.* at 36–37.  Plaintiff testified that, in contrast to his living situation in Building 8, Building 12 has cells that are air-conditioned.  *Id.* at 37.

Plaintiff testified that he has submitted multiple sick requests regarding his heat-related issues.  (Doc. No. 18, p. 38.)  Dr. Kwarteng is aware of these issues, Plaintiff states.  *Id.* at 39.  Rather than provide specific treatment, however, Dr. Kwarteng has suggested that Plaintiff use "respite," which means informing a guard that he needs to be placed in an air-conditioned area. *Id.*  Whenever Plaintiff has asked for respite, however, he has never been placed in a location with air conditioning.  *Id.* at 40.  Plaintiff estimates that he has asked for respite between 30 and 50 times, with some requests going to Dr. Kwarteng.  *Id.*

Plaintiff asserts that Dr. Kwarteng has acted with deliberate indifference to his serious medical needs by failing to do anything to help him even though able to do so.  (Doc. No. 18, p.

41.)  Plaintiff alleges that security officials uniformly follow what Dr. Kwarteng orders them to do.  *Id.*  According to Plaintiff, despite Plaintiff's medical conditions and Dr. Kwarteng's awareness of such conditions, Dr. Kwarteng ignored Plaintiff's heat-related complaints.  *Id.* at 43.

Plaintiff further testified that other inmates with heat-related restrictions and health conditions have been transferred to other prison units.  (Doc. No. 18, p. 43.)  Plaintiff alleges that Dr. Kwarteng provided these inmates with heat restrictions which, in turn, made them eligible for transfer.  *Id.*  Plaintiff acknowledges that he also has heat restrictions in place but explains that such restrictions do not specifically reference housing.  *Id.* at 43, 46-47.  In response to one of Plaintiff's Step 1 grievances, Deputy Warden Juan Nunez informed Plaintiff that he had no restriction in place requiring him to be housed in an air-conditioned building, but that Plaintiff did have work restrictions prohibiting Plaintiff's exposure to direct sunlight and temperature extremes.  *Id.* at 45-46, 51.

Plaintiff believes that the reason he has not been transferred to air-conditioned housing is that he is at the bottom of a long waiting list.  (Doc. No. 18, p. 44.)  Rather than ask for a transfer to a new prison unit, Plaintiff seeks to be placed in a new building in the same unit – the air-conditioned Building 12.  *Id.* at 42.  Plaintiff stated that every time he visits Building 12, he notices that multiple cells are empty.  *Id.* at 47-48.  Plaintiff claims that he is therefore being denied a reasonable accommodation for his alleged disabilities.  *Id.*  Plaintiff believes the denial stems from Dr. Kwarteng's decision not to house him in an air-conditioned building.  *Id.*  Rather than order Plaintiff be moved to Building 12 in response to Plaintiff's requests, Dr. Kwarteng always directs Plaintiff to "check with security."  *Id.* at 48-49.  With respect to his constitutional

and ADA/RA claims, Plaintiff sues Dr. Kwarteng in his individual and official capacities. *Id.* at 49.

Plaintiff alleges that that he sent at least one "I-60" request[2] to Warden Sanchez informing him about his medical conditions causing his heat sensitivity, his heat restrictions, and the excessive heat in his living area. (Doc. No. 19, pp. 49-52.) Warden Sanchez's failure to "follow medical orders through his customs and policies and widespread practices," Plaintiff claims, constitutes deliberate indifference to Plaintiff's medical needs. *Id.* at 51. Plaintiff also holds Warden Sanchez responsible for "allow[ing] his staff to adopt the policy of failing to act upon [Plaintiff's] request … to get respite." *Id.* at 52-53. According to Plaintiff, Warden Sanchez has denied him a reasonable accommodation for his disabilities related to his heat sensitivity by not moving Plaintiff to an air-conditioned building. *Id.* at 54-55.

Plaintiff alleges that Warden Sanchez has adopted a widespread policy or custom "not to provide air conditioning to inmate patients that are heat restricted or [to prevent the transfer of] inmates to air[-]conditioned facilities." (Doc. No. 18, pp. 53-54.) This widespread policy or custom had the effect of "not allowing certain people to go off the unit." *Id.* at 56. Plaintiff testified that: (1) Warden Sanchez played an active role in transferring other heat-restricted inmates to facilities with air conditioning; and (2) made a deliberate decision not to transfer Plaintiff to a place with air conditioning. *Id.* at 55–57. With respect to his constitutional and ADA/RA claims, Plaintiff sues Warden Sanchez in his individual and official capacities. *Id.* at 57–58.

Plaintiff claims that Director Lumpkin violated his ADA/RA rights under a theory of *respondeat superior*. (Doc. No. 18, p. 58.) Plaintiff testified that Director Lumpkin has adopted

---

[2] An "I-60," Plaintiff explained, is a simple all-purpose form for written requests. (Doc. No. 18, p. 50.)

and promoted the widespread custom and practice of allowing certain inmates like him to be subjected to excessive heat in the living area. *Id.* at 59. Director Lumpkin has also denied Plaintiff a reasonable accommodation for his disabilities related to heat sensitivity by not moving Plaintiff to a unit with air conditioning. *Id.* at 59-60. With respect to his ADA/RA claims, Plaintiff sues Director Lumpkin in his individual and official capacities. *Id.* at 60.

Lastly, Plaintiff claims that the State violated his ADA/RA rights, asserting that the State has refused to allow Plaintiff to live in an air-conditioned living area. (Doc. No. 1, p. 60.) Plaintiff testified that, in addition to monetary relief, he seeks injunctive relief in the form of being moved to an air-conditioned living space. *Id.* at 60-61.

### C. *Legal standard.*

When a prisoner seeks to proceed *in forma pauperis*, the court evaluates the complaint and dismisses it without service of process if the court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *see also* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that the defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise the plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, the plaintiff's claim should not be dismissed. *Id.*

### D. Discussion.

#### 1. Plaintiff's § 1983 claims.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him or her of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he or she misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

"Personal involvement is an essential element of a civil rights cause of action."

*Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).  There is no vicarious or *respondeat*

*superior* liability of supervisors under section 1983.  *Thompkins v. Belt,* 828 F.2d 298, 303–04

(5th Cir. 1987); *see also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts

of subordinates do not trigger individual § 1983 liability for supervisory officials).

A supervisory official may be held liable only if "(1) he affirmatively participates in the

acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that

causally result in the constitutional injury."  *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011).

"A policy is normally an official statement, ordinance, or regulation, but in certain circumstances

a persistent, widespread practice that is so commonplace as to constitute a custom can also be

treated as policy."  *McNeil v. Caruso,* No. 17-01688, 2019 WL 1435831, at *2 (M.D. La. Mar.

28, 2019) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

> ### a.  The Eleventh Amendment bars Plaintiff's § 1983 claims for monetary relief against Dr. Kwarteng and Warden Sanchez in their official capacities.  Those claims should be dismissed.

A suit against a state officer in his or her official capacity is effectively a suit against that

state official's office.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  The

Eleventh Amendment, however, bars claims for money damages against a state or state agency.

*See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of*

*Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).  As such, an action for monetary damages

against a state official in his or her official capacity is one against the state itself and is barred by

the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The Fifth

Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and

officials acting in their official capacities.  *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002)

(Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities). Additionally, a "claim against an official employed by UTMB in his or her official capacity is a claim against UTMB, a state agency, and thus a claim against the State of Texas." *Prescott v. Pace*, No. 3:18-CV-0378, 2018 WL 6386216, at *3 (S.D. Tex. Dec. 6, 2018) (Hanks, J.) (citing *Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 604 (5th Cir. 2008)).[3]

To the extent that Plaintiff sues Dr. Kwarteng or Warden Sanchez in their official capacities for money damages, such § 1983 claims are barred by the Eleventh Amendment. Thus, the undersigned recommends that Plaintiff's claims for money damages against Dr. Kwarteng and Warden Sanchez in their official capacities be dismissed.

> **b. The Court should retain Plaintiff's Eighth Amendment deliberate indifference claims against Dr. Kwarteng in his capacity for monetary relief and in his official capacity for injunctive relief. Plaintiff's Eighth Amendment claim against Warden Sanchez should be dismissed.**

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (*per curiam*) (internal quotations omitted)).

Prison officials must provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825,

---

[3] The Court takes notice that Dr. Kwarteng may be an employee of UTMB. *See Birdow v. Chapa*, No. 2:21-cv-00102, 2021 WL 7184961, at *3 (S.D. Tex. Oct. 5, 2021) (Hampton, M.J.) (reflecting Dr. Kwarteng's status as a UTMB employee), *adopted*, 2022 WL 263471 (Jan. 28, 2022).

832 (1994).  Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992).

Extreme temperatures in prison can violate the Eighth Amendment.  *Yates v. Collier*, 868 F.3d 354, 360 (5th Cir. 2017); *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015); *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004).  "To be tantamount to the infliction of cruel and unusual punishment, prison conditions must pose an unreasonable risk of serious damage to a prisoner's health—an objective test—and prison officials must have acted with deliberate indifference to the risk posed—a subjective test."  *Ball*, 792 F.3d at 592 (internal quotation marks omitted) (affirming holding that Eighth Amendment was violated when prisoners who were being treated for hypertension and diabetes were held in very hot cells without sufficient access to heat-relief measures); *see Webb v. Livingston*, 618 F. App'x 201, 208–09 (5th Cir. 2015) (affirming holding that inmates with heat-sensitive medical conditions who were housed in cells where the temperature exceeded 100 degrees had asserted facts that, if proven, would overcome qualified immunity).

To demonstrate that prison conditions impose an unreasonable risk of serious damage to a prisoner's health, an inmate need not show that a death or serious injury already has occurred but rather that there is a "substantial risk of serious harm."  *Ball*, 792 F.3d at 593 (citing *Gates*, 376 F.3d at 333).  "Without the requisite proof of both subjective and objective components of an Eighth Amendment violation, however, merely 'uncomfortable' heat in a prisoner's cell does not reflect a 'basic human need that the prison has failed to meet' and is not constitutionally suspect."  *Id.* 792 F.3d at 592 (citing *Woods*, 51 F.3d at 581).

Plaintiff alleges that he: (1) suffers from medical conditions (including diabetes, hypertension and schizophrenic disorder), which make him susceptible to suffering various ailments during exposure to excessive heat; (2) has medical conditions and a psychological disorder that, when exposed to heat, result in him becoming dehydrated, dizzy and unable to concentrate, experiencing chest pain and shortness of breath, having heat cramps and hallucinations, and hearing voices; (3) is subjected to excessive heat of over 100 degrees in Building 8, where he is housed; and (4) experienced a heat cramp a week before the September 1, 2022 *Spears* hearing.  (Doc. No. 1, pp. 9-10; Doc. No. 18, pp. 30-38.)  In describing the excessive heat, Plaintiff states the excessive heat: (1) typically begins around 9:00 a.m. and lasts until midnight; and (2) began in March 2022 and remained present through the beginning of September 2022.  (Doc. No. 18, p. 35.)

While acknowledging that he was provided showers once or twice a week and has regular access to cold water, Plaintiff nonetheless alleges that Dr. Kwarteng was aware of his heat-related issues through Plaintiff's multiple sick call requests but effectively ignored his requests to be housed in an air-conditioned area.  (Doc. No. 18, pp. 36, 38-39.)  Plaintiff's allegations, accepted as true for purposes of screening, indicate that Dr. Kwarteng has the authority to order Plaintiff to be moved to air-conditioned housing in Building 12 but has failed to do so, instead referring the matter to security.  *Id.* at 40-41, 48-49.  The undersigned finds that Plaintiff's allegation is sufficient to allege an Eighth Amendment claim against Dr. Kwarteng in his individual capacity for monetary relief and in his official capacity for injunctive relief.

On the other hand, the undersigned concludes that Plaintiff's Eighth Amendment deliberate indifference claim against Warden Sanchez should be dismissed.  A supervisory official may be held liable under § 1983 only if he or she "affirmatively participates" in the acts

that cause the constitutional deprivation or "implements unconstitutional policies that causally result in the constitutional injury." *Porter*, 659 F.3d at 446.  Plaintiff testified that he submitted his written I-60 requests for movement to air-conditioned housing.  The only response Plaintiff received came not from Warden Sanchez, but from Deputy Warden Munoz.  (Doc. No. 18. pp. 50-51.)  Plaintiff alleges no other communication with Warden Sanchez regarding his housing assignment.  Accordingly, the undersigned concludes that Plaintiff has failed to offer anything more than speculation that Warden Sanchez affirmatively participated in any denial of a change to Plaintiff's housing assignment.

The undersigned also finds that Plaintiff has not sufficiently alleged that Warden Sanchez implemented any policy or widespread practice not to provide air conditioning to heat-restricted inmates.  Plaintiff does not allege the existence of any written policy to that effect, and he offers nothing more than speculation that Warden Sanchez has adopted any policy or practice or custom to deny housing assignments for heat-restricted inmates.  *Cf. Porter*, 659 F.3d at 446. Plaintiff's sole allegation is that he, himself, was denied air-conditioned housing.  To the extent that Plaintiff's theory of liability is based on an allegation of a widespread custom or practice, the undersigned concludes that Plaintiff's theory is supported not by any factual allegation but only by Plaintiff's speculation.  This is not enough.

Overall, Plaintiff's allegations, accepted as true, state a plausible Eighth Amendment claim of deliberate indifference against Dr. Kwarteng.  Accordingly, the undersigned recommends that Plaintiff's claim against Dr. Kwarteng be retained, in Dr. Kwarteng's individual capacity for monetary relief and in his official capacity for injunctive relief.  The undersigned recommends that the Eighth Amendment claim against Warden Sanchez be dismissed as frivolous or for failure to state a claim upon which relief may be granted.

13 / 23

### c. Plaintiff's equal protection claims against Dr. Kwarteng and Warden Sanchez in their individual and official capacities are frivolous or fail to state a claim upon which relief may be granted.  Those claims should be dismissed.

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Duarte v. City of Lewisville, Tex.*, 858 F.3d 348, 353 (5th Cir. 2017) (internal quotation marks and citations omitted); *see Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016).  To establish an Equal Protection Clause violation, a plaintiff must prove "purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (internal quotation marks and citation omitted); *Baranowski v. Hart*, 486 F.3d 112, 123 (5th Cir. 2007).

First, Plaintiff's equal protection claim cannot be sustained on the basis of his membership in any suspect class.  "Disability, unlike race or national origin, is not a suspect classification under Equal Protection analysis." *Streater v. Davis*, No. 5:19-CV-00263-H, 2021 WL 5768849, at *13 (N.D. Tex. Dec. 6, 2021) (citing *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985)).

Nor can Plaintiff rely on a "class of one" equal protection claim in this case.  A class of one claim alleges differential treatment that is not based on membership in a suspect class or on the infringement of a fundamental right.  *See Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 594 (2008); *Wood*, 836 F.3d at 539.  Such a claim requires the plaintiff to show that "(1) he or she was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment." *Id.* (internal quotation marks and citation omitted).  A

plaintiff must show "that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000), *overruled on other grounds by McClendon v. City of Columbia*, 305 F.3d 314, 328–29 (5th Cir. 2002)). "'[I]f the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws.'" *Little v. Tex. Attorney Gen.*, No. 3:14-CV-3089-D, 2015 WL 5613321 at *6 (N.D. Tex. Sept. 24, 2015) (quoting *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997)).

Plaintiff claims that his equal protection rights were violated when he was treated less favorably than other inmates with heat restrictions, because those inmates were transferred to air-conditioned prison units. Plaintiff alleges that Dr. Kwarteng provided these inmates with heat restrictions which, in turn, made them eligible for transfer. (Doc. No. 18 at 43). Plaintiff testified that Warden Sanchez played an active role in transferring other heat-restricted inmates to facilities with air conditioning and made a deliberate decision not to transfer Plaintiff to a place with air conditioning. *Id.* at 55-57.

Construed liberally, this is a "class of one" equal protection allegation. But Plaintiff's allegations, even accepted as true, are conclusory: they are based solely on his personal belief that he was treated differently than other heat-sensitive inmates. Plaintiff's testimony at the *Spears* hearing reflects that he was assigned work-related heat restrictions but no restrictions requiring him to be housed in an air-conditioned building. Plaintiff identifies no specific inmates who had similar heat-sensitive impairments, had the same work-related heat restrictions in place, and who were transferred to air-conditioned units. Rather than offer specific allegations of any discriminatory purpose toward him, Plaintiff instead indicates that the basis for his not being

transferred was simply that he was at the bottom of a long waiting list.  (Doc. No. 18 at 44.)
Accepting Plaintiff's allegation at face value, every other inmate on that waiting list is also
awaiting air-conditioned housing; this acknowledgement eviscerates any argument that officials
intentionally treated Plaintiff differently from others similarly situated.  Plaintiff likewise offers
no allegation of irrationality in the employment of a waiting list method for assignment of
housing.

Plaintiff's allegations fail to indicate that either Dr. Kwarteng or Warden Sanchez acted
with any discriminatory purpose toward Plaintiff under a "class of one" theory or that any such
differential treatment regarding the transfer of other inmates to air-conditioned units had no
rational basis.  *See Pedraza v. Meyer*, 919 F.2d 317, 318 n.1 (5th Cir. 1990) (vague and
conclusory allegations that equal protection rights have been violated are insufficient to raise an
equal protection claim; *Alvarez v. Bergt*, No. 5:16cv39, 2016 WL 11200944, at *6 (E.D. Tex.
Aug. 10, 2016) (recognizing that, in order to state a "'class of one' equal protection claim,"
plaintiff must allege facts "showing any such differential treatment had no rational basis").
Plaintiff has made no such showing here.  Accordingly, the undersigned recommends that
Plaintiff's equal protection claim against Dr. Kwarteng and Warden Sanchez in their individual
and official capacities be dismissed with prejudice as frivolous or for failure to state a claim upon
which relief may be granted.

### 2. *Plaintiff's ADA/RA claims.*

The ADA provides that "no qualified individual with a disability shall, by reason of such
disability, be excluded from participation in or be denied the benefits of the services, programs
or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. §
12132.  Similarly, under the RA, "[n]o qualified individual with a disability . . .  shall, solely by

reason of her or his such disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

"The RA is operationally identical to the ADA in that both statutes prohibit discrimination against disabled persons; however, the ADA applies only to public entities while the RA applies to any federally funded programs or activities, whether public or private." *Borum v. Swisher Cnty.*, No. 2:14-CV-127-J, 2015 WL 327508, at *3 (N.D. Tex. Jan. 26, 2015) (citing *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)).  Courts utilize the same standards in analyzing claims under both the ADA and RA.  *See Frame v. City of Arlington*, 657 F.3d 215, 223-24 (5th Cir. 2011).  The undersigned, therefore, analyzes Plaintiff's ADA/RA claims here as though they were raised as a single claim.  *See Borum*, 2015 WL 327508, at *3.

To establish a valid ADA claim against a public entity through persons acting in their official capacities, a plaintiff must plead facts to indicate (1) that he has a qualified disability within the meaning of the ADA, (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity, and (3) that such discrimination is by reason of his disability.  *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).  The same standards and remedies apply to claims brought under the RA.  *See Frame*, 657 F.3d at 225.

Under the ADA, discrimination effectively means failure to provide a reasonable accommodation to the needs of the disabled person.  *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004).  The Fifth Circuit has held that a prison's failure to satisfy the reasonable accommodation requirement may constitute a denial of services or benefits as well as intentional discrimination sufficient to satisfy the second and third prongs of the Title II ADA

inquiry.  *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014).  "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations."  *Ball*, 792 F.3d at 596 n.9.

In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners.  *See United States v. Georgia,* 546 U.S. 151, 160 (2006) (recognizing prisoner's allegations that defendant refused to provide a reasonable accommodation to a paraplegic inmate, "in such fundamentals as mobility, hygiene, [and] medical care," resulted in the disabled inmate suffering serious punishment "without penal justification" and supported claims under the ADA and RA).

### a.  Plaintiff cannot bring ADA/RA claims against Dr. Kwarteng, Warden Sanchez, or Director Lumpkin in their individual capacities.  Those claims should be dismissed.

Plaintiff sues Dr. Kwarteng, Sanchez, and Lumpkin in their individual capacities with respect to his ADA/RA claims.  A plaintiff cannot sue defendants in their individual capacities under either the ADA or RA.  *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999); *Nottingham*, 499 F. App'x at 376 n.6; *Roberts v. Cooper*, No. 6:22cv102, 2022 WL 2442798, at *4 (E.D. Tex. Apr. 29, 2022), *adopted* 2022 WL 2440776 (E.D. Tex. Jul 5, 2022); *Payne v. Sutterfield*, No. 2:18-CV-084, 2021 WL 3173902, at *3 (N.D. Tex. Jul. 27, 2021).  Accordingly, the undersigned recommends that Plaintiff's ADA/RA claims against Dr. Kwarteng, Warden Sanchez, and Director Lumpkin in their individual capacities be dismissed with prejudice as frivolous or for failure to state a claim upon which relief may be granted.

**b.  The Court should retain Plaintiff's ADA/RA claims against the State and against Dr. Kwarteng, Warden Sanchez, and Director Lumpkin in their official capacities.**

Plaintiff brings his ADA/RA claims against the State of Texas as well as the individual defendants in their official capacities.  The ADA does not "itself prohibit suits against both the State and its agencies."  *Patrick v. Martin*, No. 2:16-CV-216, 2018 WL 3966349, at *5 (N.D. Tex. Jun. 29, 2018), *adopted* 2018 WL 3956484 (N.D. Tex. Aug. 17, 2018) (citing 42 U.S.C. § 12131(1)(a)-(b)).  Further, the Fifth Circuit has held that state officers sued in their official capacities are proper defendants in suits brought under the ADA.  *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412–14 (5th Cir. 2004) ("Defendants have been sued in their official capacities and are therefore representing their respective state agencies (which are proper Title II defendants) for all purposes except the Eleventh Amendment.").  Construing the pleadings liberally and accepting Plaintiff's allegations as true, the undersigned finds that Plaintiff sufficiently shows that he suffers from mental and physical impairments that, when combined with excessive heat, greatly limit his daily life activities, and that, at least for purposes of this screening, he is a "qualified individual with a disability."[4]  *See Peña Arita v. Cnty. of Starr, Tex.*, No. 7:19-CV-00288, 2020 WL 5505929, at *5 (S.D. Tex. Sept. 11, 2020) (Alvarez, J.) (in evaluating a motion to dismiss, the court explains that it cannot say definitely whether the individual suffered a disability, but that the court's role is to "interpret [p]laintiffs' complaint as a

---

[4]  Plaintiff self-reports that he has been diagnosed with diabetes and hypertension as well as a schizophrenia disorder.  (Doc. No. 18, pp. 30-33.)  In addition to construing the pleadings liberally, the undersigned also reads the definition of "disability" broadly.  "The definition of 'disability' is broad and accommodating—an impairment that 'substantially limits' a major life activity need only reduce the disabled person's ability to perform a major life activity as compared to the general population."  *Peña Arita*, 2020 WL 5505929, at *4 (quoting *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590–91 (5th Cir. 2016)).

whole and grant [p]laintiffs every reasonable inference to determine whether [p]laintiffs state a plausible claim for relief").

Plaintiff alleges that Defendants have denied him reasonable accommodations for his heat-sensitive disabilities by not providing him with special housing in the form of transfer to Building 12.  Plaintiff's allegations suggest that the lack of such accommodations caused him to suffer more pain and punishment than non-disabled prisoners.

In *Hinojosa v. Livingston*, 994 F. Supp. 2d 840 (S.D. Tex. 2014) (Ramos, J.), plaintiff Hinojosa, the mother of a former inmate who died of hyperthermia claimed pursuant to the ADA/RA that the decedent's combination of medical conditions and medications rendered him disabled and vulnerable to extreme heat, and that prison officials' failure to make reasonable accommodations for those disabilities resulted in the decedent's death.  *Id.* at 842.  The court concluded that Hinojosa had alleged sufficient facts to state the requisite discrimination under the ADA and RA.  The court explained:

> [Hinojosa] allege[d] that Defendant knew of the risks and dangers associated with certain medical conditions and medications, that Defendant knew the decedent suffered from those conditions and used those medications, and that despite that knowledge, Defendant failed to make reasonable accommodations, resulting in the decedent suffering more pain and punishment than non-disabled prisoners—namely, his death.  It is not enough for Defendant to claim that all prisoners in the Garza West Unit—whether suffering from a disability or not—endured the same housing and living conditions that the decedent did because even though the condition complained of was suffered by all of the inmates, [Hinojosa] has alleged sufficient facts to state that those conditions were more onerous on the decedent due to his particular disabilities.  Nevertheless, Plaintiff still pleads facts indicating that UTMB policy permitted housing accommodations for some disabled individuals (i.e., those with mobility impairments requiring a wheelchair), but not for individuals suffering from heat-sensitive disabilities.

*Id.* at 843.

So too here.  Plaintiff's allegations indicate that Dr. Kwarteng and Warden Sanchez were aware of Plaintiff's vulnerability to excessive heat conditions due to his various medical and mental health conditions.  (Doc. No. 1, pp. 8-10, 17-18.)  In contrast to *Hinojosa*, however, Plaintiff's allegations also reflect that some inmates with unspecified heat-sensitive issues were transferred to air-conditioned prison units.  Nevertheless, Plaintiff's allegations suggest that the combination of his medical and mental health conditions may have caused him to be more susceptible to excessive heat than other inmates, regardless of their level of sensitivity to such conditions.  Further, as alleged by Plaintiff, Dr. Kwarteng and Warden Sanchez failed to provide Plaintiff with placement in an air-conditioned living area, an accommodation that Plaintiff claims is reasonable to mitigate the risk posed to Plaintiff by the allegedly excessive heat conditions.

At this early stage in the proceedings, the undersigned concludes that these allegations are sufficient to survive screening: Plaintiff's ADA/RA claims should be retained against each individual defendant[5] in his official capacity, as well as against the State.  Further factual and legal development of these claims would be necessary to determine whether Plaintiff's exposure to the allegedly excessive heat in his living area caused him to suffer more pain and punishment than his non-disabled counterparts and whether a state agency such as TDCJ or the University of Texas Medical Branch (UTMB) should be substituted in place of the State of Texas.[6]

---

[5] The claim against Director Lumpkin can move forward at this screening stage based on the theory of *respondeat superior*, a theory that in this ADA/RA context is used to impute actions of an employee-agent to an employer.  *See Rodriguez v. Mrs. Baird's Bakery, Inc.*, No. 95-50923, 1997 WL 156989, at *3 (5th Cir. Mar. 25, 1997) (*per curiam*).

[6] Plaintiff's claim regarding the State of Texas is that the State had a practice of denying air-conditioned living space.  This is an "official capacity" claim that seeks relief from the State; therefore, only prospective injunctive relief is available, not monetary relief.  *See Prescott v. Pace*, 2018 WL 6386216, at *4 n.2.

### *E. Conclusion and recommendation.*

For the reasons stated above and for purposes of § 1915A and § 1915(e)(2), the undersigned recommends that the Court RETAIN: (1) Plaintiff's Eighth Amendment deliberate indifference claims against Dr. Isaac Kwarteng in his individual capacity for monetary relief and in his official capacity for injunctive relief; and (2) ADA/RA claims against the State of Texas and Dr. Kwarteng, Warden Sanchez, and Director Lumpkin in their official capacities.  The undersigned will order service on Defendants by separate order.

The undersigned recommends further that: (1) Plaintiff's § 1983 claims for money damages against Dr. Kwarteng and Warden Sanchez in their official capacities be DISMISSED without prejudice as barred by the Eleventh Amendment; (2) Plaintiff's Eighth Amendment deliberate indifference claim against Warden Sanchez be DISMISSED with prejudice as frivolous or for failure to state a claim upon which relief may be granted; (3) Plaintiff's equal protection claims against Dr. Kwarteng and Warden Sanchez in their individual and official capacities be DISMISSED with prejudice as frivolous or for failure to state a claim upon which relief may be granted; and (4) Plaintiff's ADA/RA claims against Dr. Kwarteng, Warden Sanchez, and Director Lumpkin in their individual capacities be DISMISSED with prejudice as frivolous or for failure to state a claim upon which relief may be granted.

### *F. Notice.*

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

22 / 23

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **14 days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

    SIGNED on October 31, 2022.

MITCHEL NEUROCK
United States Magistrate Judge

23 / 23